## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**UNITED STATES OF AMERICA,**

       **Plaintiff,**

                                   **Case No. 1:20-cr-13-4**

   **v.**

                                   **JUDGE DOUGLAS R. COLE**

**GILBERT STEELE,**

       **Defendant.**

### OPINION AND ORDER

The latest development in this multi-defendant case for conspiracy to distribute cocaine is Defendant Gilbert Steele's motion for compassionate release (Doc. 145). For the reasons discussed below, the Court **DENIES** Steele's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Doc. 145).

## BACKGROUND

As part of a long-running cocaine distribution conspiracy, Steele stored drugs and cash at his residence, as well as transporting cocaine across state lines. (Plea Agreement, Doc. 72, #468). Police eventually seized 12 kilograms of cocaine from Steele's residence, and he admitted in his plea agreement that authorities should hold him responsible for conspiring to distribute at least 18 kilograms of cocaine. (*Id.*).

Steele was indicted on two counts: Conspiracy to Possess with Intent to Distribute Cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A), and 841(b)(1)(C) (Count 1); and Possession with Intent to Distribute Cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 18 U.S.C. § 2 (Count 2). (Indictment, Doc. 23, #189–92). He pleaded guilty to Count 1. (Doc. 72, #463–67; 3/1/21 Min. Entry).

And on November 10, 2021, the then-presiding judge sentenced him to 70 months of imprisonment, 8 years of supervised release, a $100 special assessment, and forfeiture. (Doc. 119, #866 (hearing minutes); Doc. 125, #882–89 (judgment)). The Court also dismissed Count 2, (Doc. 127), and granted the government's motion for forfeiture, (Doc. 140).

Steele subsequently retained new counsel, (Doc. 144), and filed a motion for compassionate release (Doc. 145). He seeks early release because (1) he "is now the only available caregiver for his ailing and aging mother," (*id.* at #996); (2) he has satisfied the procedural prerequisites to seek compassionate release, (*id.* at #997); and (3) "[t]he sentencing factors in 18 U.S.C. § 3553(a) now weigh in Mr. Steele's favor," mainly because of his demonstrated rehabilitation, (*id.* at #997–98).

The case was then reassigned to the undersigned. (Doc. 146). After the Court granted the government's request for an extension, (2/26/24 Not. Order (granting Doc. 150)), and its motion for leave to respond out of time, (3/25/24 Not. Order (granting Doc. 151)), the government responded contesting all three of Steele's arguments, (Doc. 152, #1013–16). Steele has since replied, (Doc. 153), so the matter is ripe for the Court's review.

## LEGAL STANDARD

"Sentence modifications are the exception, not the rule. This is because a judgment of conviction that includes a sentence of imprisonment constitutes a final judgment and may not be modified by a district court except in limited circumstances.

2

One exception … is colloquially known as the 'compassionate release' statute." *United States v. Hunter*, 12 F.4th 555, 561 (6th Cir. 2021) (cleaned up).

Steele seeks to modify his sentence under that statute, 18 U.S.C. § 3582(c)(1)(A). Such reductions are subject to an exhaustion requirement. A criminal defendant may seek a sentence reduction on compassionate release grounds only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* Beyond that, "[a]s relevant here, § 3582(c)(1)(A) authorizes a district court to reduce a defendant's sentence only if it finds that the defendant satisfies three requirements[.]" *Hunter*, 12 F.4th at 561. First, "extraordinary and compelling reasons [must] warrant such a reduction." *Id.* (cleaned up). Second, the "reduction [must be] consistent with applicable policy statements issued by the Sentencing Commission." *Id.* (cleaned up). And finally, "the relevant [18 U.S.C.] § 3553(a) factors [must] support the reduction." *Id.*

As to the first requirement, "extraordinary and compelling reasons" are not statutorily defined. *Id.* But that is not to say that the Court is without guideposts. To start, "the text and structure of § 3582(c)(1)(A)" provide that neither "non-retroactive changes in the law" nor "facts that existed when the defendant was sentenced" can be "extraordinary and compelling reasons" supporting a sentence reduction. *Id.* at 562. And in terms of what *does* count, Sentencing Guidelines § 1B1.13 provides non-binding guidance to district courts. *Id.* at 561–62; *see also United States v. Tomes*, 990

3

F.3d 500, 503 n.1 (6th Cir. 2021) ("[T]he court may not proceed as though § 1B1.13 *constrains* its analysis of what constitutes extraordinary and compelling reasons for release. But because district courts are free to define extraordinary and compelling on their own initiative, they may look to § 1B1.13 as relevant, even if no longer binding." (cleaned up)). Finally, "it is settled that a defendant's post-sentencing rehabilitation cannot alone justify compassionate release." *United States v. Allen*, No. 16-20414, 2022 WL 16951638, at *6 (E.D. Mich. Nov. 15, 2022) (citing *United States v. Ruffin*, 978 F.3d 1000, 1004 (6th Cir. 2020)).

"Ultimately, the defendant has the burden to show he is entitled to a sentence reduction under § 3582(c)(1)(A)." *United States v. Jarvis*, No. 1:94cr68, 2020 WL 4726455, at *1 (N.D. Ohio Aug. 14, 2020) (cleaned up). And in considering such a motion, "[t]he district court has substantial discretion. The statute says that the district court 'may' reduce a sentence[,] … [not that it] must do so." *Ruffin*, 978 F.3d at 1005.

## LAW AND ANALYSIS

Steele has met the procedural prerequisites to file. But as discussed below, he does not satisfy the other two requirements. He has not shown "extraordinary and compelling reasons" why the Court should grant his motion, as he has not shown either that his mother is incapacitated, or that he is her only available caregiver. And, separately, the § 3553(a) factors counsel against granting the Motion.

**A.    Steele Has Met the Procedural Prerequisites to File.**

The Court agrees that Steele has satisfied the statutory requirements to move for sentence reduction. Recall that he needed to either "fully exhaust[] all administrative rights … [or wait] 30 days from the receipt of such a request by the warden of the defendant's facility, whichever [wa]s earlier," to bring his motion. 18 U.S.C. § 3582(c)(1)(A). Here, Steele made his request "on May 30, 2023[,] which was reportedly received the very next day by his Warden, David LeMaster, who in turn denied it on June 26, 2023." (Doc. 145, #997; Doc. 145-3, #1002 (email requesting consideration for compassionate release); Doc. 145-4, #1003 (response from Warden LeMaster denying Steele's request)). And Steele filed his Motion on January 11, 2024, (*see* Doc. 145)—far more than 30 days after the warden received his request. So he has satisfied the exhaustion requirement.

The government argues otherwise, contending that Steele needed to file an administrative appeal after he received Warden LeMaster's response. (Doc. 152, #1013–14). But that argument contradicts the plain text of the statute, which states that a defendant may *either* exhaust administrative appeals *or* wait thirty days from when the warden received the request, "whichever is earlier." So it is unpersuasive. The Court therefore concludes that Steele has met the procedural requirements.

**B.    Steele Has Not Shown "Extraordinary and Compelling" Reasons to Grant His Motion.**

But the Motion fails on the merits. Steele argues that his case matches one of the examples that the Sentencing Guidelines set forth as a basis for compassionate release: "[t]he incapacitation of the defendant's parent when the defendant would be

the only available caregiver for the parent." U.S.S.G. § 1B1.13(b)(3)(C). But, as discussed more below, he has not shown that his mother is incapacitated, or that he is the sole caregiver available for her. So the Court cannot grant Steele's Motion on this basis.

The only evidence Steele submits to support his assertion that his mother is incapacitated appears to be discharge notes from an unspecified lower-body "[t]otal joint replacement." (Doc. 145-1, #999–1000; *see also* Doc. 145, #996 ("Patricia Steele ('Mrs. Steele'), who suffers from debilitating rheumatoid arthritis and has become incapacitated by leg problems that have resulted therefrom and which have already required, and likely will again require, surgery.")). While the discharge notes do not indicate the affected joint, presumably it was a hip or knee. But hip or knee replacement surgery typically does not leave a person "incapacitated." *United States v. Jones*, No. CR 13-252, 2021 WL 1060218, at *10 (W.D. Pa. Mar. 18, 2021) ("[C]ourts have explained that incapacitated means completely disabled, and to refer to someone who cannot carry on any self-care and is totally confined to a bed or chair." (cleaned up)); *see also United States v. Milchin*, No. CR 17-00284-1, 2023 WL 7544995, at *1 (E.D. Pa. Nov. 13, 2023) ("[H]ip replacement surgery, an increasingly common procedure, does not as a matter of course, permanently prevent someone from caring for their spouse."). In fact, as a general matter, a successful hip or knee replacement surgery quickly—usually within a few weeks—renders the patient far *less* incapacitated than they were before surgery. And parents' aging-related health problems that fall short of incapacitation are not "extraordinary and compelling

circumstances" that justify compassionate release under 18 U.S.C. § 3582(c)(1)(A). *United States v. Ingram*, No. 2:14-cr-40, 2019 WL 3162305, at *2 (S.D. Ohio July 16, 2019) ("Many, if not all inmates, have aging and sick parents. Such circumstance is not extraordinary."); *United States v. Woodrome*, No. 4:15-cr-28, 2022 WL 2307495, at *2 (S.D. Ind. June 27, 2022) ("The desire to care for an elderly or ill parent, however, is not an extraordinary and compelling reason warranting a sentence reduction." (collecting cases)). So the evidence Steele has presented provides insufficient reason for the Court to conclude his mother is in fact incapacitated, or that her health problems are an "extraordinary and compelling circumstance" justifying compassionate release.

Steele argues that there is more evidence he could offer, and that he would be glad to provide it at a hearing. (Doc. 153, #1020). But that assertion is neither evidence nor an explanation for why he did not present that other evidence as part of his Motion in the first place. As a result, the Court need not hold a hearing, as Steele has not explained any evidence that he would be "unable to present" absent such a hearing. *United States v. Gordon*, No. 21-3699, 2022 WL 3098197, at *2 (6th Cir. Feb. 15, 2022) ("Finally, the district court did not abuse its discretion when it denied Gordon's motion for an evidentiary hearing[,] … [as it] was not required to hold a hearing, and Gordon has not identified any specific information that he was unable to present[.]" (citations omitted)).

Moreover, even assuming Steele could provide additional evidence showing his mother is incapacitated, that showing would not change the result here. When relying

on an incapacitated family member as the basis for a compassionate release motion, it is not enough for a prisoner to show that the close family member is incapacitated. Rather, Steele must also show that he is the only available caregiver. *United States v. Moore*, No. CR 14-209-2, 2020 WL 7024245, at *5 (E.D. Pa. Nov. 30, 2020) ("[O]ther courts [have] denied motions for compassionate release premised on sick or elderly parents in the absence of strong evidence the petitioner is the *sole* individual capable of caring for the parent."). Steele acknowledges he has a brother and a sister, either of whom presumably could care for his mother. (Doc. 145, #996). So Steele has not shown he is her sole available caregiver.

Steele resists this conclusion on two fronts. First, he says his brother lives in Georgia. (*Id.*). That may well be the case. But Steele fails to explain why his mother could not move to Georgia, at least temporarily, if she needs in-home care. Or why his brother could not travel to Ohio, at least for some period of time, to provide that care. Without greater explanation on that front, the Court does not agree that Steele's brother clearly cannot provide the necessary care. *See United States v. Rhodes*, No. CR15-23, 2021 WL 4460031, at *6 (W.D. Pa. Sept. 29, 2021) ("[T]he record reflects that Rhodes' sister is available to provide care for his mother, although she does not live close by her mother. In sum, Rhodes' age and family circumstances do not rise to the kind of compelling and extraordinary reasons that would warrant compassionate release." (citation omitted)); *United States v. Crandle*, No. CR 10-35, 2020 WL 2188865, at *4 (M.D. La. May 6, 2020) ("Crandle has submitted … no letters or affidavits from family members regarding his parents' condition and the type of care

8

needed. … [T]he Court has before it no information as to why other relatives cannot care for his parents, and his PSR reflects that Crandle has three siblings[.]").

He says his sister is similarly "unable to [care for their mother] because she too is disabled and suffers from a sever [sic] and permanent hearing loss." (Doc. 145, #996). But that is a non sequitur. People with profound, or even complete, hearing loss serve as physicians, nurses, nursing home workers, and caregivers of all stripes. The National Deaf Center, for example, reports that "[n]ational data suggests that 3% of all physicians have a disability, and among those with disabilities, 12% are deaf." *Deaf Healthcare Students and Professionals*, NAT'L DEAF CTR., https://perma.cc/EAM6-H6RB. The Court thus sees little reason why the sister's hearing loss would prevent her from caring for their mother.

In short, the Court concludes that Steele has failed to establish either that his mother is incapacitated or that he is the sole available caregiver. Both are necessary, *Moore*, 2020 WL 7024245, at *5, and he has the burden of proof on each, *Jarvis*, 2020 WL 4726455, at *1. Given his failure on the latter element, the Court determines it is not necessary to grant him an evidentiary hearing to flesh out the medical evidence relating to the former.

## C. The § 3553(a) Factors Counsel Against Granting Steele's Motion.

Beyond that, the Motion also fails for an independent reason. In reviewing the seven § 3553(a) factors, the Court concludes that they do not support Steele's request for early release. Start with the first two factors: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant," and (2) the need

for the sentence to "reflect the seriousness of the offense," deter criminal conduct, "protect the public from further crimes of the defendant," and provide "correctional treatment." 18 U.S.C. § 3553(a). Steele was part of a large-scale, long-running drug conspiracy and was personally responsible, by his own admission, for 18 kilograms of cocaine. (Doc. 72, #468). The seriousness of that offense, and of his role in the conspiracy, remains unchanged since his sentencing.

The third and fourth § 3553(a) factors—the kinds of sentences and sentencing range available for the crime—also counsel against granting Steele's Motion. The seriousness of the offense supports imprisonment. In fact, Steele's own sentencing memorandum at the time of trial suggested an appropriate sentencing range would be 4–7 years. (Doc. 107, #807). And the then-presiding judge chose a sentence roughly in the middle of that range: 70 months.

Nor do the last three § 3553(a) factors—"any pertinent policy statement" issued by the Sentencing Commission, avoiding "unwarranted sentencing disparities," and "the need to provide restitution to any victims," 18 U.S.C. § 3553(a)—change that result. The Court already considered these factors at the time of sentencing, and Steele has presented nothing to change its view of those factors. So the § 3553(a) factors, taken together, do not support releasing Steele.

Steele contests this conclusion by saying he is rehabilitated and has a record of regularly leaving the facility where he is incarcerated "for work on an almost-daily basis without incident." (Doc. 145, #997–98; *see generally* Doc. 153). But, as discussed above, his rehabilitation argument is his only remaining argument. And "it is settled

that a defendant's post-sentencing rehabilitation cannot alone justify compassionate release." *Allen*, 2022 WL 16951638, at *6 (cleaned up). So even if Steele has shown rehabilitation—a debatable proposition, as he offers only his statement about completing work release without incident, and one that the government contests, (*see* Doc. 152, #1016)—the Court cannot grant his Motion on that basis.

## CONCLUSION

For the above reasons, the Court **DENIES** Steele's Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (Doc. 145).

**SO ORDERED.**

| | |
|---|---|
| May 1, 2024 | |
| **DATE** | **DOUGLAS R. COLE** |
| | **UNITED STATES DISTRICT JUDGE** |